## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

FOUNDEVER OPERATING
CORPORATION,

     Plaintiff,

v.                                                           Case No: 8:23-cv-1495-CEH-UAM

HILARY HAHN,

     Defendant.

_____

## **ORDER**

This cause comes before the Court on Plaintiff Foundever Operating Corporation's ("Foundever") Motion for Preliminary Injunction (Doc. 14). Defendant Hilary Hahn has responded in opposition (Doc. 22), and Foundever has replied (Doc. 31). An evidentiary hearing was held on October 24, 2023.

Upon review and consideration, and being duly advised in the premises, the Court will grant-in-part and deny-in-part the motion for preliminary injunction.

## I.  BACKGROUND

### A. Factual Background

Plaintiff Foundever Operating Corporation ("Foundever") is a customer service solutions company that maintains call centers throughout the world. Doc. 1-1 ¶ 15. Foundever alleges that its success in the industry depends on its trade secrets and proprietary and confidential information, such as its prospective client lists, proposals, project information, sales and marketing strategies, pricing information, etc. *Id.* ¶¶ 16-

17.   It protects its confidential information by entering into restrictive covenant agreements with its employees, requiring employees to maintain confidentiality, and requiring log-in authentication for its business software applications. *Id.* ¶ 20. Foundever was previously known as Sitel Operating Corporation ("Sitel").[1] *Id.* ¶ 11.

Defendant Hilary Hahn began working for a company called Sykes Enterprises as the vice president of business development on June 1, 2017. Doc. 1-1 ¶ 8.  She signed an Employment Agreement with Sykes on the same date. Doc. 14-1.  The Agreement acknowledged, *inter alia*, that Hahn would acquire confidential information as part of her employment, and she agreed to maintain its confidentiality during and after her employment. *Id.* at § 4(a).  All "memoranda, notes, records, papers or other documents and all copies thereof" that related to Sykes' operations of business, even if Hahn prepared them, would be Sykes' property, and Hahn was prohibited from copying or removing them for any reason other than Sykes' benefit. *Id.* § 4(b).  Hahn also agreed to "deliver all of the aforementioned documents and objects, if any, that may be in [her] possession to [Sykes] upon termination" of her employment. *Id.*

The Agreement also contained a non-competition provision. *Id.* § 5.  Hahn agreed not to be directly or indirectly engaged in business with any company that does business substantially similar to Sykes for a period of six months following her separation from the company. *Id.* § 5(c)(1)-(2); *id.* at 20 (Ex. A).  The provision also

---

[1] This Order uses the term "Foundever" to refer to Foundever Operating Corporation, its former named company Sitel Operating Corporation, and its predecessor company Sykes Enterprises.

stated that the duration of the non-compete "shall be extended in an amount which equals the time period during which [Hahn] is or has been in violation" of it. *Id.* § 5(d).

In addition, the Agreement stated the following:

> This Agreement shall be binding upon and inure to the benefit of [Sykes], <u>its respective successors and assigns</u>, and [Hahn and her] heirs, executors, administrators, and legal representatives. Except as expressly set forth herein, <u>no party shall assign any of its or its rights under this Agreement without the prior written consent</u> of the other party and any attempted assignment without such prior written consent shall be null and without legal effect.

*Id.* § 9 (emphasis added).

Sitel acquired Sykes Enterprises on August 27, 2021, but at first Sykes retained its name and operated as a wholly owned subsidiary of Sitel. Doc. 1-1 ¶ 9.   In December 2022, Sykes changed its name and Sykes employees became Sitel employees. *Id.*

Hahn's employment with Sitel terminated as of February 1, 2023. *Id.* ¶¶ 10, 59. Her termination resulted from her decision not to sign Sitel onboarding documents, including a new non-compete, which Foundever alleges was required for all former Sykes employees. Doc. 14-1 ¶¶ 10-14; Doc. 22-1 ¶¶ 31-34, 44-46.

At some point in the spring of 2024, Hahn became employed by WebHelp, Foundever's direct competitor. Doc. 1-1 ¶¶ 60-61.  Foundever learned of Hahn's new employment on approximately April 25, 2023, from a press release dated April 20, 2023. Doc. 14-1 ¶ 15.  Upon hearing about Hahn's new employment, Foundever began an internal investigation. *Id.* ¶ 16.  Foundever learned that Hahn began searching for new employment in the fall of 2022, and first met with WebHelp about a role there in

late November. Doc. 1-1 ¶¶ 47-50.  Foundever also learned that Hahn emailed to her personal email account a client's billing information and a strategy presentation on January 10 and 12, 2023. *Id.* ¶¶ 52-53.  She also copied the contents of her work-issued laptop to a personal storage device via Time Machine backup. *Id.* ¶¶ 55-56.  On her last day of employment, Hahn accessed at least 19 additional Foundever files. *Id.* ¶ 57.

Foundever contacted Hahn on April 25, 2023, to assert that she was in violation of the non-competition provision in her Employment Agreement. *Id.* ¶ 65.  Hahn disputed that she was bound by the Agreement, because Sykes no longer exists. *Id.* ¶ 66.

### B. Procedural History and the Instant Motion

Foundever initiated the instant action in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, on May 10, 2023. Doc. 1-1. Count I alleges that Hahn violated the Florida Uniform Trade Secrets Act ("FUTSA") by using or disclosing Foundever's trade secret information. *Id.* ¶¶ 68-81.  Count II alleges a breach of contract for the alleged breach of the Employment Agreement's non-competition provision by working for a direct competitor within six months of her termination. *Id.* ¶¶ 82-95.  Count III alleges that she breached her fiduciary duty to Foundever by transferring and disclosing confidential information and seeking employment with a direct competitor. *Id.* ¶¶ 96-105.

Hahn removed the action to this Court on July 5, 2023. Doc. 1.  On August 4, 2023, Foundever moved for a preliminary injunction. Doc. 14.  In addition to the allegations in the complaint, Foundever stated that a subsequent forensic investigation

revealed that Hahn had uploaded a variety of Foundever documents to a Dropbox.com account registered to her personal email on January 31 and February 1, 2023. Doc. 14-2.  Hahn also deleted local files from her work-issued computer and uninstalled the Dropbox application. *Id.*

The motion for preliminary injunction seeks an order enjoining Hahn and anyone acting in concert with her from: 1) providing customer experience services for any competing business for six months; 2) disclosing or utilizing any of Foundever's confidential information; 3) inducing or attempting to induce any of Foundever's employees to terminate their employment; and 4) inducing or attempting to induce any of Foundever's customers or prospective customers with whom Hahn had contact during her employment to terminate or reduce their business with Foundever. Doc. 14-3.

Because the Court determined that material disputes of fact existed in the parties' submissions, it ordered an evidentiary hearing.  The sole witness called at the hearing was Erin Wallace, Foundever's senior Human Resources director, whom Foundever described as its corporate representative.  The parties otherwise relied on the documentary evidence and declarations.

## II.   EVIDENTIARY ISSUES

Before considering the merits of the motion for preliminary injunction, several evidentiary issues must be addressed as a threshold matter.  First, Hahn objected to any reliance on declarations at the evidentiary hearing, arguing that it deprived the opposing party of the opportunity to cross-examine the declarant.  However, in *Levi*

*Strauss & Co. v. Sunrise Intern. Trading Inc.*, the Eleventh Circuit upheld a preliminary injunction that was based on an evidentiary hearing as well as sworn witness statements, stating that a district court considering a preliminary injunction "may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceedings." 51 F.3d 982, 985-86 (11th Cir. 1995) (quotation omitted); *see also Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 22-10306, 2022 WL 1124753, *14 (11th Cir. April 15, 2022) (same).  Pursuant to this authority, the Court finds that the consideration of such evidence is appropriate at the preliminary injunction stage.

However, the Court observes that it can consider only evidence that was submitted on the docket with the complaint or motion materials, or any documents that were admitted into evidence at the evidentiary hearing.  At the hearing, Foundever provided an exhibit list consisting of 24 documents. Doc. 42.  Hahn stipulated to the admission of 13 of them, and those 13 were admitted into evidence. *Id.*  With respect to the remaining 11 proposed exhibits, however, Foundever did not move to admit them into evidence.  All but one of these documents had already been filed on the docket.  The only document that was not already filed was Foundever's proposed exhibit 18, Hahn's responses to Plaintiff's first set of interrogatories.  Because this document was not admitted into evidence, the Court cannot consider its contents with respect to the instant motion.

Hahn raised a second evidentiary objection at the end of the hearing.  She stated that several of the declarations on which Foundever relies were submitted with its

reply, rather than its original motion.  Hahn pointed out that Local Rule 6.02(a)(2), Middle District of Florida, provides that a motion for preliminary injunction must include as an attachment "each paper on which the movant relies."  In addition, the Court's Order directing Foundever to reply did not grant it permission to submit additional evidence.  Hahn therefore argued that the Court should not consider the additional declarations.

The Court's Order directing Foundever to reply was silent as to whether Foundever could include any additional evidence. Doc. 25.  The Order directed Foundever to "address[] the legal arguments Defendant raised in her response in opposition to the motion for preliminary injunction." *Id.*  After Foundever moved for leave to file excess pages, the Court issued an Order stating that the reply "shall not exceed ten (10) pages, inclusive of all parts." Doc. 30.  Foundever's motion for excess pages did not request permission to file additional evidence or otherwise address the submission of exhibits. Doc. 29.

Hahn is correct that Local Rule 6.02(a)(c) directs a moving party to include each document on which it relies with its motion for preliminary injunction.  At least one court has prohibited a party from submitting additional evidence with a reply pursuant to this rule. *See Furmanite Am., Inc. v. T.D. Williamson, Inc.*, No. 6:06-cv-641, 2006 WL 8439589, *3 (M.D. Fla. Aug. 17, 2006) (denying a motion for leave to reply, because the proposed reply relied on "untimely declarations and evidence that did not accompany its complaint or motion for a preliminary injunction.").  Further, while the Court's Orders did not explicitly prohibit Foundever from submitting additional

7

evidence with its reply, neither did they grant permission.  And although Foundever could have moved to admit the additional declarations into evidence at the hearing, it failed to do so.

On the other hand, Hahn did not raise the issue until the hearing had concluded. In the six weeks between the filing of the reply and the hearing, she did not file a motion to strike or otherwise object to the submission of additional evidence.  Her failure to timely object has arguably waived the issue; at the very least, it deprived Foundever of the opportunity to respond, seek permission from the Court, or ensure that it moved to admit the declarations into evidence at the hearing.

Upon consideration, the Court need not resolve this issue.  Even if it does not consider the evidence attached to Foundever's reply, the result of the motion for preliminary injunction is the same as if it considered all the evidence.  In either scenario, the Court would grant-in-part and deny-in-part the motion for preliminary injunction, for the same reasons and in the same manner.  Accordingly, the remainder of this Order will not rely on the additional declarations submitted with Foundever's reply in support of its motion for preliminary injunction (Doc. 31).

## III.   LEGAL STANDARD

A party seeking entry of a preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Forsyth Cty.*

*v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quotations omitted). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (citation omitted).  The entry of a preliminary injunction is "the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000), quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975).

"Where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *Transcontinental Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less*, 910 F.3d 1130, 1169 (11th Cir. 2018), quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998).  On the other hand, an evidentiary hearing is required where "conflicting factual information places in serious dispute issues central to a party's claims and much depends upon the accurate presentation of numerous facts." *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1211 (11th Cir. 2003), quoting *Robertson*, 147 F.3d at 1312 (modifications omitted).

## IV.   DISCUSSION

### A. Likelihood of Success on the Merits

The first prerequisite for a preliminary injunction, a substantial likelihood of success on the merits, is "generally the most important." *Schiavo ex rel. Schindler v.*

*Schiavo*, 357 F.Supp.2d 1378, 1381 (M.D. Fla. 2005), *aff'd*, 403 F.3d 1223 (11th Cir. 2005). A plaintiff need only show "likely or probable, rather than certain, success." *Id.*

### 1. *Breach of Contract*

In Count II, Foundever primarily asserts that Hahn breached the Employment Agreement by working for its direct competitor within six months of her termination. Hahn contends that she is not bound by the Agreement's non-competition provision for two reasons. First, she did not consent to an assignment from Sykes to Sitel and Foundever. Doc. 22 at 12-13. Second, she argues that Foundever has failed to prove the enforceability of the restrictive covenant considering Florida law, which requires an employer to prove that the contractual restraint is reasonably necessary to protect a legitimate business interest justifying the restriction. *Id.* at 13-15. Hahn does not appear to dispute that she would be in violation of the non-compete if it is enforceable.

Foundever responds that it may enforce the Agreement because it is Sykes's successor, without the need for an assignment. Doc. 31 at 7-8. With respect to the non-compete's enforceability, Foundever contends that the provision is reasonable in scope and necessary to protect its legitimate business interests, which include trade secrets and other confidential business information and relationships with prospective or existing customers.

### a. *Foundever likely may enforce the Agreement as Sykes' successor.*

First, it is probable that Foundever may enforce the Agreement because it is Sykes' successor by operation of law. Florida law provides that the Court "shall not

refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is…an assignee or successor to a party to such contract, provided…the restrictive covenant expressly authorized enforcement by a party's assignee or successor." Fla. Stat. § 542.335(1)(f)(1).  Here, the Employment Agreement states that it shall be binding upon and inure to the benefit of Sykes's "successors and assigns." Doc. 14-1 § 9.  Although it provides that Hahn's consent is required to assign Sykes's rights, *id.*, no similar requirement exists for Sykes's successors.

Successors and assigns are not synonymous.  Black's Law Dictionary defines a "successor" as one "who succeeds to the office, rights, responsibilities or place of another [or] who replaces or follows a predecessor." Black's Law Dictionary (11th ed. 2019).   In the alternative, it is "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." *Id.*  An assign is "someone to whom property rights or powers are transferred by another." *Id.* (defining "assignee," "also termed *assign*").

The Florida Supreme Court differentiated between the two terms in a related context in *Corporate Express Office Products, Inc. v. Phillips*, 847 So.2d 406 (Fla. 2003). The court held that a non-compete provision may be enforced by a successor corporation, without the need for an assignment, in three scenarios:

> (1) a 100 percent stock purchase in which the corporate entity is unchanged except for a change in management; (2) a corporate merger in which two corporations unite into a single corporation and the surviving corporation assumes the rights and liabilities of the merging corporation; or (3) where a corporation merely undergoes a name change[.]

*Johnson Controls, Inc. v. Rumore*, No. 8:07-cv-1808, 2008 WL 203575, *7 (M.D. Fla. Jan. 23, 2008), citing *Corporate Express*, 847 So.2d at 411-414.[2]   In contrast, the purchaser of a corporation's assets, rather than stock, requires an assignment. *Corporate Express*, 847 So.2d at 413; *Sun Group Enterprises, Inc. v. DeWitte*, 890 So.2d 410, 411 (Fla. 5th DCA 2004).   Further, a subsidiary is a separate legal entity rather than a successor of the parent corporation, and will not assume a parent company's liabilities without an assignment. *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1075 (11th Cir. 2003); *Verbal v. TIVA Healthcare, Inc.*, 628 F.Supp.3d 1222, 1228 (S.D. Fla. 2022).

Foundever alleges in its Verified Complaint that Sitel "acquired" Sykes on August 27, 2021, without stating what type of acquisition occurred. Doc. 1-1 ¶ 6. Foundever further alleges that, at first, Sykes "operate[d] as a wholly owned subsidiary of Sitel[,]" but then it changed its name to Sitel and its employees became Sitel employees in December 2022. *Id.* ¶ 9.   Sitel later changed its name to Foundever. *Id.* ¶ 5.   If the acquisition was a stock purchase, which is likely, Foundever became the successor of Sykes as a matter of law as of December 2022.   Pursuant to *Corporate Express* and Fla. Stat. § 542.335(1)(f), there is a substantial likelihood that an assignment was not necessary for Foundever to enforce the Employment Agreement.

---

[2] The *Corporate Express* court was interpreting the predecessor statute to Fla. Stat. § 542.335, which did not expressly provide for the enforcement of restrictive covenants by successors or assigns. *See* 847 So.2d at 410 n.3.

At the hearing, Hahn also argued that Foundever had not proven that it could enforce the Agreement because the Agreement was not signed by the CEO of Sitel. Hahn pointed to a provision of the Sitel Associate Handbook, dated August 2019, which stated:

> I understand and agree that employment at Sitel is at-will and may be terminated with or without cause or notice.  Similarly, no Sitel official has the authority to enter into an oral employment contract, and any contract guaranteeing employment must be in writing and signed by a Chief Executive Officer and Global Chief HR Officer.

Doc. 43-2 at 59. Hahn argued that the Employment Agreement was a "contract guaranteeing employment" as contemplated in the handbook provision, and that its lack of signature by the Sitel CEO rendered it invalid.

Foundever's Human Resources director, Erin Wallace, testified that Hahn was an at-will employee, as demonstrated by Section 2 of her Employment Agreement, but that changes to the Agreement affecting at-will employment would need to be approved by the CEO.  Foundever argued that the Sitel handbook provision referred only to non-at-will employees.

The Court is not persuaded that the Sitel Associate Handbook renders Hahn's Employment Agreement invalid.  The handbook states that it "supersedes any previously published handbooks," but not that it supersedes or modifies employment agreements. Doc. 43-2 at 59.  It further states that "nothing in [it] creates an expressed or implied contract of employment between Sitel and me, but rather is intended to foster a better working environment," and that the company has the right "to change

any of its guidelines, policies, practices, working conditions or benefits at any time, with or without notice." *Id.*  In contrast, the Employment Agreement is a contract between the parties that sets forth the terms of Hahn's at-will employment. *See* Doc. 14-1 at 10-19.  It states that no provision "may be modified or waived unless such modification or waiver is agreed to in writing signed by the parties hereto," and the Agreement supersedes any prior agreement relating to Hahn's employment with the company. *Id.* at 18, § 9.  Unlike the handbook, the Agreement will "be binding upon and insure to the benefit of [Sykes], its respective successors and assigns, and [Hahn and her heirs and legal representatives]." *Id.*  It is therefore unlikely that the Sitel handbook could be found to substantively modify the Agreement.

Moreover, the Court agrees with Foundever that the Employment Agreement is, by its terms, not a "contract guaranteeing employment" because it provides for at-will employment, rather than a guaranteed term. *Id.* at 11, § 2.  Even if the Associate Handbook could alter the Agreement, then, it would not render Hahn's Agreement invalid.  There is therefore a substantial likelihood that Foundever may enforce the Agreement.

### b.  *The non-competition provision is likely enforceable.*

Hahn next argues that the non-competition provision of the Agreement is unenforceable even if Foundever is able to enforce the Agreement.  Hahn disputes that Foundever has offered sufficient proof that the provision is justified by legitimate business interests.

Florida law permits the enforcement of non-competition restrictive covenants that are "reasonable in time, area, and line of business."  An employment non-compete is presumed reasonable in time if it is six months or less in duration. *Id.* at § 542.335(1)(d)(1).  In addition, the non-competition provision must be justified by the existence of "one or more legitimate business interests," which include: trade secrets; valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers; customer goodwill associated with an ongoing business practice or specific location or trade area; or extraordinary or specialized training. *Id.* § 542.335(1)(b). Proof of only one legitimate business interest is required to justify a non-compete covenant. *Proudfoot Consulting Corp. v. Gordon*, 576 F.3d 1223, 1233 (11th Cir. 2009). The party seeking enforcement must further prove that the restraint "is reasonably necessary to protect the legitimate business interests" that justify it. Fla. Stat. § 542.335(1)(c).

The protection of valuable confidential information is a legitimate business interest justifying a restrictive covenant, whether or not the information rises to the level of a trade secret. Fla. Stat. 542.335(1)(b); *see Proudfoot Consulting*, 576 F.3d at 1234-35 (district court did not err in concluding that exposure by senior employee to confidential information and subsequent employment with competitor justified enforcement of non-compete).  On the other hand, information that is commonly known, not unique to the injured party, or readily accessible from other sources is not confidential or protected. *See Autonation v. O'Brien*, 347 F.Supp.2d 1299, 1304 (S.D.

Fla. 2004) (citations omitted); *Thyssenkrupp Elevator Corp. v. Hubbard*, No. 2:13-cv-202-JES-CM, 2013 WL 5929132, *5 (M.D. Fla. Nov. 4, 2013).  An employer who fails to establish evidence of particular information that is confidential or that, if obtained by a competitor, would enable unfair competition will not carry its burden of demonstrating that confidential information justifies a non-competition agreement. *Armor Corr. Health Servs., Inc. v. Teal*, No. 19-cv-24656, 2021 WL 5834245, *10 (S.D. Fla. Dec. 8, 2021).

Non-competition agreements will be upheld, however, if they are justified by the protection of "business information which is not otherwise readily available to the public, or has been acquired or compiled through the industry of a party." *Veterinary Orthopedic Implants, Inc. v. Haas*, No. 3:20-cv-868-MMH-MCR, 2020 WL 5369087, *10 (M.D. Fla. Sept. 8, 2020) (collecting cases).  In *Veterinary Orthopedic*, for example, the court found that the plaintiff had established, despite disputes of fact, a substantial likelihood that it could justify a non-compete to protect certain categories of information the court determined constituted protectible confidential business information to which the defendant had access during his employment. *Id.* at *10-12; *see also Autonation v. O'Brien*, 347 F.Supp.2d at 1305-06 (despite disputes of fact, employer sufficiently demonstrated defendant, a senior employee, was exposed in the course of his employment to confidential information that was not shared outside the company).

Here, the non-competition provision prohibits Hahn, for a period of six months, from being directly or indirectly engaged in business with any company that does

business substantially similar to Sykes. Doc. 14-1 § 5, p. 20.  Hahn does not argue that any aspect of it is unreasonable, and its duration of six months is presumptively reasonable. Fla. Stat. § 542.335(1)(d)(1).

Foundever asserts that the non-competition provision is justified by legitimate business interests because Hahn, as a former executive, is "intimately knowledgeable of [Foundever's] trade secrets, customers, the confidential information related to servicing [its] customers, and the training, experience and compensation of the employees who service [its] customers"; as a result, it argues she possesses "an unfair competitive advantage in the marketplace." Doc. 14 at 14-15.  Hahn responds that Foundever has not met its burden of establishing that the information is confidential, which she disputes.

Wallace's declaration states only that Hahn "had access to [Foundever's] competitively sensitive information," Doc. 14-1 ¶ 8.  This conclusory allegation cannot be given much weight.   At the hearing, however, Wallace elaborated that competitively sensitive information included customer lists, pricing information, proposals for customers, strategy presentations, request for proposal responses, and services contracts.  She further explained that the customer lists were competitively sensitive because they included information collected over a period of time about customers or prospective customers that would help Foundever present its business to them, such as specific qualities those companies might be looking for in an outsourcing company.  If the lists fell into competitors' hands, the lists would give competitors the chance to unfairly compete against Foundever.

Hahn's declaration alleges that "[t]he identity of customers, pricing information, and business strategy are all commonly known in the call center industry," as are "recruitment, training, employee engagement, and operational strategies" and "the cost per agent per month in a variety of countries that are utilized for call centers." Doc. 22-1 ¶¶ 10-11.  Buyers commonly share the pricing they expect to receive from bidders. *Id.* ¶ 12.  WebHelp executive Paul Danter also declared that "at least some of the information Foundever appears to claim is confidential is commercially available through a paid subscription with a third-party… [or] is generally known in the industry." Doc. 22-2 ¶ 12.  However, neither declaration refers to information about the *preferences* of Foundever's customers and prospects. Wallace's testimony on this point is therefore undisputed.

A customer list that includes information about customer preferences and that was compiled over time by company employees is likely to be found to be confidential. In the trade secrets context, courts have differentiated between customer lists that merely compile information commonly available to the public, and those that are "acquired or compiled through the industry of the owner." *See*, *e.g.*, *Hurry Family Revocable Trust v. Frankel*, No. 8:18-cv-2869-CEH-CPT, 2023 WL 23805, *10-13 (M.D. Fla. Jan. 3, 2023) (Honeywell, J.) (citations omitted).  This standard is similar to that employed by courts in the context of justifying non-competition provisions. *See Veterinary Orthopedic*, 2020 WL 5369087 at *10 (business information is considered confidential if it is "not otherwise readily available to the public, or has been acquired or compiled through the industry of a party.").  Information that includes notes about

customer preferences is often found to be trade secret. *Freedom Medical, Inc. v. Sewpersaud*, No. 6:20-cv-771-RBD-GJK, 2020 WL 8370952, *2 (M.D. Fla. May 6, 2020) (finding a likelihood of success on trade secrets claim where customer list contained customers' preferences and patient demographics); *G.W. Henssler & Assocs., Ltd. v. Marietta Wealth Mgmt., LLC*, No. 1:17-cv-2188, 2017 WL 6996372, *4 (N.D. Ga. Oct. 23 2017) (lists with notes on clients' "needs or preferences" was highly valuable business information that provided a competitive advantage).

While Foundever has not established that much of the information it asserts is confidential actually is confidential, Wallace's testimony is sufficient to create a substantial likelihood that the information contained in its customer lists is confidential business information to which Hahn had access in her employment with Foundever.  The existence of this information constitutes a legitimate business reason that justifies a non-competition agreement.   Accordingly, there is a substantial likelihood that the non-competition provision is enforceable.

> c. *Foundever has a substantial likelihood of success on the merits of its breach of contract claim.*

Hahn does not dispute that WebHelp is a direct competitor of Foundever, and that her employment there would violate the non-competition provision if it is found to be valid and enforceable.  Because the Court has found that it is, Foundever has established that it has a substantial likelihood of success on its breach of contract claim based on this provision.

Foundever has also offered evidence of other breaches.  The Verified Complaint alleges that Hahn also breached the Employment Agreement by soliciting Foundever's clients, Doc. 1-1 ¶ 91, and by copying, retaining, and using Foundever's confidential information and trade secrets. *Id.* ¶ 90.  The Employment Agreement prohibited Hahn from duplicating or retaining any "memoranda, notes, records, papers or other documents…relating to [Sykes'] operations or business," including "documents and objects concerning any customer lists, contracts, price lists, manuals, mailing lists, advertising materials, and all other materials and records of any kind that may be in [Hahn's] possession or…control." Doc. 14-1 at 12, ¶ 4(b).  There is no requirement that the information be confidential to fall under this provision.  Hahn does not dispute that she copied and retained Foundever's information. *See* Doc. 22-1.

The Agreement also contains a non-solicitation clause, which prohibits Hahn from doing the following:

> Provide or attempt to provide, or solicit the opportunity to provide or advise others of the opportunity to provide, any services of the type [Hahn] performed for [Sykes or its] Clients… to or for the benefit of any Client…to which [Hahn] has been introduced to or about which [Hahn] has received information through [Sykes].

Doc. 14-1 at 14, § 5(c)(3).

There is evidence that Hahn attempted to provide services to a Foundever prospect after her employment ended.  An email exchange occurred on March 2, 2023, between Hahn and Lance Lipkus, whom Hahn explains was a prospective customer to whom she had made a pitch for new business while working at Sitel. Doc. 22-1 ¶ 73; Doc. 14-1 at 35.  Lipkus contacted Hahn's personal and Foundever email addresses

to announce that the "outsourcing project" would "start again" and he believed he would be able to persuade his company to select Sitel. *Id.* Hahn replied-all to the email, which allowed Foundever to access the exchange through her Foundever email account. Hahn responded that she no longer worked for Sykes/Sitel and would start work with a new, undisclosed company in April, with whom she was "[a]lready in touch and working on a few programs that cannot wait." *Id.* After asking a question about Lipkus's finder's fee, she stated that she would "run it up the pole to establish interest[.]" *Id.* Hahn closed the email by thanking Lipkus "for letting me know that this may get reinstated." *Id.*

Hahn explains in her declaration that Lipkus subsequently informed her his company had hired Sitel, and asked her to perform additional work that he did not intend to give to Sitel, which she refused. Doc. 22-1 ¶ 75. She also avers that she was not actually working on any projects for WebHelp at the time of the email, contrary to her statement to Lipkus. *Id.* ¶ 74. But Hahn does not explain her statement that she would "run [the proposal] up the pole." Significantly, she does not state that she was referring to Foundever and intended to refer Lipkus's business there. Nor does she deny that she was referring to WebHelp. And the most reasonable interpretation of the email—in the context that she had already accepted a job at WebHelp, which she told Lipkus about—is that she intended to refer Lipkus's prospective business to WebHelp. This email exchange therefore constitutes some evidence that Hahn also violated the non-solicitation component of the Employment Agreement.

Accordingly, there is ample evidence that Hahn has breached the Employment Agreement, which establishes a substantial likelihood of success on the merits as to Count I.

### 2. *FUTSA*[3]

Count I alleges that Hahn violated FUTSA by misappropriating Foundever's trade secrets. Doc. 1-1 ¶¶ 68-81.  Specifically, Foundever alleges that she has either used, disclosed, is a threat to use, or intends to use Foundever's confidential and proprietary information to Foundever's detriment. *Id.* ¶¶ 72, 74-75.  Foundever relies on the undisputed fact that Hahn copied Foundever files to personal devices and accounts before leaving the company to work for its direct competitor, with whom she was communicating in her final months of employment at Foundever. *See* Doc. 14 *et seq.*

Hahn first argues that Foundever has not established that its information is trade secret or that it has taken reasonable steps to protect the information's secrecy. Doc.

---

[3] Hahn argues, briefly, that Florida law may not govern the claim because any alleged misappropriation occurred in New York, Hahn's place of residence. Doc. 22 at 8-9. Foundever points out in response that the Employment Agreement states Florida law will govern any breach. Doc. 31 at 8.  Because the FUTSA claim is distinct from the breach of contract claim, it is unclear that the forum selection clause governs the FUTSA claim as well. *See* Doc. 14-1 at 15, ¶ 5(d) ("These *Covenant Not-to-Compete and No Solicitation provisions* are construed and enforced under the laws of the State of Florida.") (emphasis added).  Rather, the dispute calls for an application of the conflict-of-law rules of the forum state, Florida. *See Grupo Televisa, S.A. v. Telemundo Comm. Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Neither party has briefed this issue, which requires a detailed analysis of the principles laid out in the Restatement (Second) of Conflict of Laws, sections 145 and 6. *See id.*  At this stage, absent briefing from the parties or a formal motion to dismiss by Hahn, the Court declines to undertake such an analysis on its own.  It will assume, for the purpose of this motion, that the FUTSA claim is properly before it.

22 at 9-10.   In her declaration, Hahn asserts that pricing information and business strategy are commonly known in the call center industry. Doc. 22-1 ¶¶ 9-13.   In addition, she states she was not required to segregate her business and personal information on her devices, accounts, or programs, and that she had been directed to use a Dropbox account by Sykes's predecessor, Frontier Communications. *Id.* ¶¶ 21-30.   Nor was she given any instructions related to electronic information upon her termination besides the return of her laptop, even when she asked if there were "any other meetings or necessary requirements." *Id.* ¶¶ 47-48.

Hahn further argues that Foundever cannot show a likelihood of success on the merits of the FUTSA claim because it has not shown any actual improper use of a trade secret. Doc. 22 at 11.   In her declaration, she offers innocent explanations for emailing herself and copying files in the weeks prior to her departure. Doc. 22-1 ¶¶ 39-40, 64-72.   She denies using or intending to use any of Foundever's information. *Id.* ¶¶ 39-40, 52, 61, 68, 69.

Foundever contends that even threatened misappropriation is sufficient to warrant an injunction. Doc. 31 at 11.   It also argues that Hahn's promise that she has not and will not use the information cannot be credited. *Id.* at 5-6.   Both the Verified Complaint and Wallace's declaration assert that Foundever takes reasonable steps to protect its information by means of log-in authentication for its Sharepoint database and other software, access limits based on level and business need, requiring the return of any information upon separation of employment, and using restrictive covenants for non-competition and confidentiality. Doc. 14-1 ¶ 19; Doc. 1-1 ¶¶ 19-20.

To prove a claim under FUTSA, the plaintiff must demonstrate that (1) it possessed a trade secret, and (2) the secret was misappropriated. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1310 (11th Cir. 2020) (citations omitted).

    *a.   At least some of Foundever's information is likely trade secret.*

A trade secret is information that "derives independent economic value from not being generally known" or "readily ascertainable by proper means" by others who can derive value from it, and that is the subject of reasonable efforts to maintain its secrecy. Fla. Stat. § 688.002(4).

Foundever alleges that the following information is trade secret: customer lists and prospective customer information, business methodology, promotional materials, and pricing information. Doc. 14 at 10; Doc. 1-1 ¶ 17.  It has produced evidence that Hahn uploaded to her Dropbox account customer lists, customer strategy presentations, customer pricing information, and statements of work, and that she sent to her personal email a detailed customer billing estimate, two PowerPoint presentations marketing services to potential customers, a partnership proposal for a potential customer, and information about a prospective customer. Doc. 14 at 5-7.

Hahn contends that much of this information is generally known in the call center industry.  As discussed in Section IV(A)(1)(b), *supra*, however, Foundever has provided unrefuted testimony that at least some of the information—its annotated customer lists—is confidential and proprietary, likely qualifying as a trade secret.

In addition, Foundever has adequately shown that it has taken reasonable efforts to maintain the information's secrecy.  Foundever relies on its use of password-

protection and confidentiality agreements, which courts have found constitute reasonable efforts to maintain secrecy. *See, e.g., Castellano Cosmetic Surgery Center, P.A. v. Rashae Doyle, P.A.*, No. 8:21-cv-1088-KKM-CPT, 2021 WL 3188432, *6 (M.D. Fla. July 28, 2021); *Se. Mech. Servs., Inc. v. Brody*, No. 8:08–CV– 1151–JSM-EAJ, 2008 WL 4613046, at *12 (M.D. Fla. Oct. 15, 2008). Hahn does not dispute that these measures were used. Although she states in her declaration that she was not affirmatively asked to return Foundever's information when she was terminated, the Court finds that the Employment Agreement provision directing employees to return documents is sufficient to demonstrate that Foundever's policy required the return of information. Nor does Hahn indicate that Foundever, Sitel, or Sykes advocated or were even aware of her use of personal accounts like Dropbox. At this stage, Foundever has provided sufficient evidence to establish a substantial likelihood that at least some of the information Hahn copied or retained is trade secret.

   b. *Without evidence of use, Foundever has not shown it has a likelihood of success on its FUTSA claim.*

However, Foundever has not established that it has a likelihood of success on its FUTSA claim, because it has not provided evidence that Hahn has actually used the information.

Misappropriation by use or disclosure occurs if a person discloses or uses a trade secret without consent and, *inter alia*, used improper means to acquire knowledge of it, or knew or had reason to know that the knowledge of it was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. Fla. Stat. §

688.002(2)(b). "Improper means" includes the "breach of a duty to maintain secrecy." *Id.* § 688.002(1). Moreover, "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'" *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003). "[U]se of any substantial portion of the secret is enough to subject the actor to liability." *Id.* at 1293.

A threat or intent to misappropriate trade secrets does not violate FUTSA, but either "actual or threatened misappropriation may be enjoined." Fla. Stat. § 688.003(a). Nonetheless, when determining whether a plaintiff has established a substantial likelihood of success on the merits of a FUTSA claim for the purpose of a preliminary injunction, courts have considered whether there is evidence of actual use of the trade secret. *See, e.g.*, *My Energy Monster, Inc. v. Gawrych*, No. 8:20-cv-02548-MSS-AEP, 2020 WL 8224616, *7-8 (M.D. Fla. Dec. 18, 2020) (denying preliminary injunction where there was insufficient evidence to demonstrate defendant actually used the alleged trade secret information), *report and recommendation adopted by* 2021 WL 199280 (Jan. 11, 2021); *Viable Resources, Inc. v. Belyea*, No. 8:16-cv-2669-JSM-JSS, 2016 WL 7334285, *5 (M.D. Fla. Dec. 1, 2016) (denying preliminary injunction because evidence did not establish actual use or disclosure of trade secret, where new employer testified defendant did not disclose or use in her new role the category of information plaintiff alleged was trade secret, and it was unlikely to be of benefit to new employer in any event), *report and recommendation adopted*, 2016 WL 7335485 (Dec. 16, 2016); *A.W. Ind. Inc. v. Electronic Connector Service Inc.*, No. 97-6452-CV, 1997 WL 873869, *10 (S.D. Fla. Nov. 24, 1997) (no likelihood of success on

misappropriation count where there was no evidence plaintiff actually used confidential information in his possession, compared to defendant's testimony that he did not).

In contrast, courts have found that there is a strong likelihood of success on a misappropriation claim when there is not only evidence of retention but also indications of use. *See Corp. Ins. Advisors, LLC v. Addeo*, No. 21-cv-616769, 2021 WL 66222154, *10 (S.D. Fla. Dec. 8, 2021) (strong likelihood of success on misappropriation claim where defendant forwarded client renewal lists to her personal email address shortly before leaving to work for a competitor, to whom various clients included on those lists then transferred their business); *Regions Bank v. Raymond James & Associates, Inc.*, No. 6:20-cv-658-PGB-EJK, 2020 WL 7419650, *2 (M.D. Fla. April 20, 2020) (same, where customers transferred their accounts to competitor after former employees began working there, and other customers reported former employees solicited them to transfer); *SMS Audio, LLC v. Belson*, No. 9:16-cv-81308, 2016 WL 8739764, *3 (S.D. Fla. Aug. 16, 2016) (same, where evidence showed defendants took confidential documents and emailed them to other individuals).

Here, it is undisputed that Hahn improperly retained Foundever's information by transferring it to personal accounts and devices before her termination. However, Foundever has offered no evidence that she has used it. Even though she is working for a direct competitor, Foundever has produced no indication that, for example, she shared the information with her new employer or anyone else, or that any of Foundever's customers have transferred their business to WebHelp. Significantly,

Hahn has now been employed by WebHelp for more than six months and no such use has come to Foundever's attention.  Although the lack of evidence of use does not preclude an injunction under FUTSA, it weighs against a finding that Foundever has a substantial chance of success on its FUTSA claim.

At the hearing, Foundever characterized Hahn's actions as "use" but failed to offer evidence to support the claim.  Although counsel relied heavily on information in Hahn's responses to its interrogatories, that document is not before the Court. *See* Section II, *supra*.  Nor does the Lance Lipkus email exchange constitute evidence that Hahn has used any of the documents she retained.  Accordingly, Foundever has not met its burden of proving a likelihood of success on the FUTSA claim.

### 3. *Breach of Fiduciary Duty*

In Count III, Foundever alleges a breach of fiduciary duty based on four types of conduct while Hahn was still working for Foundever: (1) misappropriating Foundever's trade secrets and confidential information; (2) actively seeking employment with Foundever's competitor; (3) violating Foundever's policies by transferring confidential information and trade secrets onto an unsecured device; and (4) using, disclosing, or attempting to use or disclose Foundever's confidential information to benefit Foundever's competitor. Doc. 1-1 ¶¶ 99-102.

Hahn argues that Foundever cannot succeed on this claim because it is preempted by FUTSA, which displaces conflicting tort laws for misappropriation of trade secrets. Doc. 22 at 15-16.  She also argues that Foundever cannot succeed

because there is no evidence she used the confidential information in a way that was adverse to Foundever's interests. *Id.* at 17.

In reply, Foundever contends that a tort claim is not preempted as long as it encompasses allegations that are distinct from a FUTSA misappropriation claim, which is the case for Count III. Doc. 31 at 9.  Specifically, the allegations that Hahn met with and assisted WebHelp—likely by disclosing Foundever's confidential information, in Foundever's view—during her employment with Foundever are distinct from a FUTSA claim. *Id.* at 9-10.  Proof of the use of information is not required to show her disloyalty. *Id.*  In addition, Foundever argues that allegations about confidential information that is not trade secret are not preempted by FUTSA, which only protects trade secrets. *Id.* at 10.

FUTSA provides that it will "displace conflicting tort, restitutory, and other law[s] of this state providing civil remedies for misappropriation of a trade secret," except that it will not affect "contractual remedies, whether or not based upon misappropriation of a trade secret" or "other civil remedies that are not based upon misappropriation of a trade secret." Fla. Stat. § 688.008.  Accordingly, courts have held that "other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA." *New Lenox Industries, Inc. v. Fenton*, 510 F.Supp.2d 893, 908 (M.D. Fla. 2007).  State law claims that are not "separate and distinct" from the FUTSA claim will therefore be dismissed. *Developmental Tech., LLC v. Valmont Industries, Inc.*, No. 8:14-cv-2796-MSS-JSS, 2016 WL 7320908, *4 (M.D. Fla. July 18, 2016) (Scriven, J.) (citations omitted).

On the other hand, torts will not be preempted where there are "material distinctions between the allegations comprising the additional torts and the allegations supporting the FUTSA claim." *Id.* (quotation omitted).  Thus, courts must compare the allegations in each claim to see if they are separate and distinct. *Id.*  If "the allegations of trade secret misappropriation *alone* comprise the underlying wrong," only the FUTSA claim will survive. *Ryder Truck Rental, Inc. v. Logistics Resource Solutions, Inc.*, No. 21-21573-CIV, 2021 WL 9037641, *5 (S.D. Fla. Nov. 23, 2021) (quotation omitted) (emphasis in original).

In *Developmental Tech.*, the court found that the allegations underlying tort claims of misappropriation of ideas and the violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), both of which involved the misuse of confidential information, were not materially distinct from a FUTSA claim alleging the misappropriation of trade secrets. 2016 WL 7320908 at *5-6.  As a result, the tort claims were preempted. *Id.*  Similarly, in *Measured Wealth Priv. Client Grp., LLC v. Foster*, No. 20-CV-80148, 2020 WL 3963716, *6 (S.D. Fla. July 13, 2020), the court found that tortious interference and FDUTPA claims were preempted by FUTSA because there were "insufficient additional factual allegations that distinguish[ed them] from the trade-secret counts."  Allegations that the defendants used deceptive and covert means to take confidential information from the plaintiff were "merely reframed allegations from the claims for misappropriation of trade secrets." *Id.* at *7.

In contrast, the *Measured Wealth* court found that counts of breach of fiduciary duty were not preempted because they were "sufficiently distinct from the FUTSA

counts." *Id.* at *6. The breach of fiduciary duty allegations "provide[d] for additional bases of liability other than liability based on trade secrets," such as using the plaintiff's confidential information to poach clients and induce them to terminate their relationship with the plaintiff. *Id.*; *see also 777 Partners LLC v. Pagnanelli*, No. 20-20172-CIV, 2022 WL 4597804, *10 (S.D. Fla. March 16, 2022) (tortious interference claim was not preempted where it was based on defendant's alleged use of the trade secrets to interfere with plaintiffs' business relationships); *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F.Supp.2d 1170, 1181 (M.D. Fla. 2005) (FDUTPA, fraud, and negligent misrepresentation claims alleging that the plaintiffs made false representations that induced defendants to divulge confidential information to their detriment, while "related to the misappropriation of trade secrets," contained material distinctions and were not preempted). Likewise, in *Advice Interactive Grp., LLC v. Web.com Grp., Inc.*, No. 3:17-cv-801-BJD-MCR, 2017 WL 6554409, *11 (M.D. Fla. Oct. 20, 2017), the court found that a FDUTPA claim was not preempted where it also contained allegations that the defendant induced the plaintiff to disclose its trade secrets, which it intended to use in violation of non-disclosure agreements, and that it signed the non-disclosure agreements while developing another product to compete with the plaintiff.

Here, one allegation underlying the breach of fiduciary duty claim is materially indistinguishable from the allegations on which the FUTSA claim is based: that Hahn misappropriated Foundever's trade secrets and confidential information. Doc. 1-1 ¶ 99. Thus, to the extent that Count III is based on this allegation alone, it is preempted

by FUTSA.[4]  However, the remaining bases for the breach of fiduciary duty claim are sufficiently distinct from the FUTSA claim.  Count III alleges that Hahn breached her duty of loyalty by actively seeking employment with and sharing confidential information with a competitor. *Id.* ¶¶ 100, 102.  It further alleges that Hahn violated Foundever's IT and corporate policies by copying confidential information onto an unsecured device. *Id.* ¶ 101.  Although these allegations are related to the misappropriation of trade secrets, they are materially distinct from the FUTSA claim and are therefore not preempted.

Having concluded that most of Count III is not preempted by FUTSA, the Court will evaluate whether there is a substantial likelihood of success on the merits. The elements of a claim for breach of the fiduciary duty of loyalty are: (1) the existence of a duty of loyalty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Martin v. Partsbase, Inc.*, No. 20-80235-CIV, 2020 WL 7495536, *2 (S.D. Fla. Dec. 4, 2020) (citations omitted).  Employees owe a duty of loyalty to their employer not to engage in disloyal acts in anticipation of future competition, such as using confidential information acquired during their employment. *Id.*, quoting *Nat'l*

---

[4] Foundever's argument that the claim is not preempted because it includes confidential information that is not trade secret is unavailing.   Courts in this District have found that FUTSA "preempts all non-contract claims based on the misappropriation of confidential and/or commercially valuable information even if the information does not constitute a trade secret under the FUTSA." *PB Legacy, Inc v. Am. Mariculture, Inc.*, No. 2:17-CV-9-FTM-29CM, 2018 WL 6325315, *4 (M.D. Fla. Dec. 4, 2018), quoting *Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352-JES-CM, 2014 WL 12606501, *6 (M.D. Fla. July 16, 2014); *see also ISO Claims Svcs., Inc., ACI Division v. Bradford Tech., Inc.*, No. 3:09-cv-976-MMH-JK, 2011 WL 13176422, *5-6 (M.D. Fla. Sept. 29, 2011) (same).

*Ins. Consulting Grp., LLC v. Kandel*, No. 19-cv-22373, 2020 WL 13389742, *3 (S.D. Fla. Jan. 15, 2020); *see also Classic Soft Trim, Inc. v. Albert*, No. 6:18-cv-1237-WWB-DAB, 2021 WL 720414, *4 (M.D. Fla. Feb. 9, 2021) (differentiating between an actual breach of the duty of loyalty and "mere preparation" of competition).

As noted, there is no evidence that Hahn actually used the Foundever information in her possession to compete with Foundever. Such evidence would be relevant to a finding that Foundever was injured by Hahn's conduct or that her conduct went beyond mere preparation of competition. Nonetheless, Foundever has introduced evidence that Hahn met with WebHelp, Foundever's direct competitor in the same market, while she was employed at Foundever, in order to discuss WebHelp's processes and pricing "to ensure [its] success in North America." With or without the disclosure of confidential information during this conversation, the Court agrees with Foundever that this conduct would constitute a breach of the duty of loyalty that was likely to injure Foundever. *See OPS Int'l, Inc. v. Ekeanyanwu*, --- F.Supp.3d ---, No. 6:21-cv-1947-PGB-EJK, 2023 WL 4350419, *7 (M.D. Fla. May 11, 2023) (granting summary judgment to plaintiff for breach of fiduciary duty where defendant, *inter alia*, consulted for plaintiff's competitor, "thus undermining [plaintiff's] standing in the market"). Accordingly, there is a substantial likelihood of success on the merits for this aspect of Count III.

## B. Irreparable Harm

"A showing of irreparable injury is the sine qua non of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quotation omitted). To merit a

preliminary injunction, the plaintiff must show that it will suffer, or faces a substantial likelihood of suffering, irreparable injury if the injunction is not granted. *Id.* at 1176 n.9.  The asserted injury "must be neither remote nor speculative, but actual and imminent." *Id.* (quotation omitted).  An injury is irreparable if there is no adequate remedy at law to recover damages for the harm suffered. *Georgia v. President of the United States*, 46 F.4th 1283, 1302 (11th Cir. 2022) (citation omitted).  Economic harm alone is generally not considered irreparable unless the monetary loss is unrecoverable. *Id.* The loss of customers and goodwill is an irreparable injury. *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 780 (11th Cir. 2015) (quotation omitted).

Foundever contends that it is entitled to a presumption of irreparable injury because the case involves the violation of a non-competition agreement. Doc. 14 at 19-20.  In response, Hahn disputes that the Florida statute providing a presumption of irreparable harm in the event of a violation of a restrictive covenant applies in federal court. Doc. 22 at 5-6.  Hahn further argues that Foundever has not established any actual injury, and that its delay in seeking an injunction undercuts its claim of irreparable harm. *Id.* at 6-8.  In reply, Foundever asserts that any delay is attributable to Hahn. Doc. 31 at 3-5.

There is a split in the caselaw regarding whether Florida federal courts should apply a presumption of irreparable harm to a violation of a restrictive covenant.  Fla. Stat. § 542.335(j) states that "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of the restrictive covenant."  Some federal courts have applied this presumption, while others

have found that it should not apply because federal law governs equitable procedures such as injunctions. *See Vital Pharmaceuticals, Inc. v. Alfieri*, 23 F.4th 1282, 1292 (11th Cir. 2022) (describing the issue as a "knotty choice-of-law question" but declining to resolve it); *id.* at 1293-99 (Prior, J., concurring) (detailing the conflict and recommending use of the federal standard rather than the state presumption).  There is no binding authority that resolves the conflict.[5]

Even if the Court does not apply the presumption,[6] however, Foundever has presented evidence that demonstrates it is under threat of irreparable harm.  It is undisputed that Hahn is now working for Foundever's direct competitor, and that she continues to have access to not only any confidential information she learned in her senior role at Foundever that remains in her knowledge, but also all of her Foundever

---

[5] Hahn argued at the hearing that binding authority was provided by *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991), which held that traditional federal equity practice constitutes "federal procedure," such that federal rules apply in diversity cases to determine whether a preliminary injunction should issue.  Yet, despite *Ferrero*, the *Vital* court described the question as unresolved, 23 F.4th at 1292, a description that is verified by the conflicting conclusions reached by myriad Florida district courts and even some unreported decisions of the Eleventh Circuit. *See, e.g.*, *TransUnion Risk and Alternative Data Solutions, Inc. v. MacLachlan*, 625 F. App'x 403, 406 (11th Cir. 2015) (concluding Florida presumption of irreparable harm works in tandem with federal preliminary injunction rule); *National Staffing Solutions, Inc. v. Sanchez*, 626 F.Supp.3d 1247, 1254 (M.D. Fla. 2022) (applying presumption); *GPS Industries, LLC v. Lewis*, 691 F.Supp.2d 1327, 1337 (M.D. Fla. 2010) (citing presumption that would apply if there had been an enforceable restrictive covenant).  This Court finds, as the *Vital* court recognized, that the question remains unresolved.

[6] The Court is also not persuaded by Foundever's argument that Hahn cannot rebut any presumption of irreparable injury because of her acknowledgment in the Agreement that any breach would cause irreparable harm to her employer. Doc. 14 at 20, citing Doc. 14-1 at 13, § 5(a)(8), 15, § 5(d).  A plaintiff must clearly establish all four elements of a preliminary injunction in order to merit injunctive relief, and courts have found that "the requirement of a showing of irreparable injury cannot be stipulated away by an employee." *Regions Bank v. Raymond James & Associates, Inc.*, No. 6:20-cv-658-PGB-EJK, 2020 WL 6870815, * 5 n.10 (M.D. Fla. May 15, 2020).

files, which the Court has found include at least some confidential and proprietary information.  Further, Hahn's actions in declining to sign a new non-compete agreement with Sitel while actively interviewing with a direct competitor, in addition to her stated belief that the 2017 Agreement and its non-compete agreement was no longer in effect, strongly suggest that she intended to compete with Sitel/Foundever at the time she copied the files to her personal accounts and devices.   These circumstances are enough to demonstrate that irreparable harm is likely, even if it has not yet occurred.  In *All Star Recruiting Locums, LLC v. Ivy Staffing Solutions, LLC*, No. 21-cv-62221, 2022 WL 2340997, *17 (S.D. Fla. April 8, 2022), for example, the court declined to apply the presumption, but found that the plaintiff established that it faced a threat of irreparable harm if the defendants were allowed to compete with it with the benefit of its protected information.   The court emphasized that the defendants' retention and use of plaintiff's confidential information, in violation of a confidentiality agreement, presented a risk of irreparable harm because it would allow them to compete unfairly against the plaintiff. *Id.*; *see also Lincare v. Markovic*, No. 8:22-cv-918-MSS-TGW, 2022 WL 18927111, *9 (M.D. Fla. Nov. 17, 2022) (in addition to the presumption of irreparable harm, plaintiff proved threat of irreparable harm with evidence that defendant, as a senior employee, had access to confidential information before departing company to work for a direct competitor as executive vice president of strategy and business development) *report and recommendation adopted,* 2023 WL 2329207 (Jan. 11, 2023); *Osborne Associates, Inc. v. Cangemi*, No. 3:17-cv-1135-MMH-MCR, 2017 WL 5443146, *15 (M.D. Fla. Nov. 14, 2017) ("Permitting [defendants] to

operate their business in direct competition with [plaintiff], and in direct violation of the covenants-not-to-compete they signed, presents a harm that is irreparable.").

Hahn argues that her declaration creates a dispute of fact that precludes a finding in Foundever's favor, as Foundever carries the burden of proof.  Her declaration asserts that she has not used and will not use any of Foundever's information in her new job, and that she and WebHelp agreed that she would not "solicit or participate in any current Sitel client activities[.]" Doc. 22-1 ¶¶ 59-61.  She also states that she has "started to build expertise in a new vertical that I did not have experience in at my prior employers." *Id.* ¶ 59.  She does not provide any other information about the nature of her new role in comparison to her former role and knowledge.  A declaration of a senior WebHelp employee attests the same with respect to her agreement not to use Foundever's information or solicit its clients, but is silent as to the nature of her new role and whether Foundever's information would be helpful to it. Doc. 22-2 ¶¶ 3-5, 7-8, 10-12.

Based on the declarations, Hahn urges the Court to follow *TransUnion Risk and Alternative Data Solutions, Inc. v. Challa*, 676 F. App'x 822, 825-26 (11th Cir. 2017), in which the Eleventh Circuit held that the district court did not err in finding that the defendant overcame a presumption of irreparable injury.  After making credibility findings at an evidentiary hearing, the district court credited the defendant's and new employer's testimony that the defendant would not use any of the plaintiff's proprietary information in his new position because of the nature of the role, despite the close relationship between the companies. *Id.*

*Challa* is inapposite.  Here, Hahn's decision not to testify at the evidentiary hearing precludes the Court from making a credibility determination.  In addition, the declarations she submitted simply state that she will not use Foundever's information or solicit its clients, without giving any reason that it would not be beneficial to do so.  The statement that she is gaining expertise in a new vertical is not the same as stating that she is exclusively working in a different vertical than her former job.  Absent an express allegation or explanation that she would not have use for Foundever's confidential information in her new role, or details about any distinctions between the two roles that would allow the Court to reach the same conclusion, Hahn's statements stand in contrast to the testimony in *Challa*.  Despite Hahn's bare denial of the allegations, the evidence is sufficient to find a likelihood that Foundever will suffer irreparable injury without an injunction.

Lastly, Hahn argues that Foundever's claim of irreparable harm is undercut by its delay in seeking injunctive relief.  "A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm" because "[a] preliminary injunction requires showing 'imminent' irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *see also Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 467-69 (M.D. Fla. 2022) (collecting cases in which courts found delays of between two and six months to conflict with a claim of irreparable harm).  On the other hand, a relatively short delay that is attributable to a reasonable attempt to mediate the issues does not negate a

finding of irreparable harm. *See, e.g., Boggs Contracting, Inc. v. Freismuth*, No. 6:21-cv-2088-CEM-EJK, 2021 WL 6755466, *4 (M.D. Fla. Dec. 27, 2021).

Foundever was aware in late April 2023 that Hahn was working for its direct competitor in violation of the non-compete provision.  In addition, it was aware by May 10, 2023, the date it filed the state court complaint, that Hahn had improperly retained or copied at least some Foundever documents. *See* Doc. 1-1.  Foundever did not move for a preliminary injunction until August 4, 2023. Doc. 14.  It argues that this delay is attributable to extensions that were given to Hahn as well as its attempts to negotiate a settlement. Doc. 31 at 3-4.

The record does not establish that any delay attributable to Hahn prevented Foundever from seeking injunctive relief.  Neither her alleged delay in responding to the complaint nor her subsequent removal of the action to this Court had any effect on Foundever's ability to move for an injunction to prevent the harm it alleges is imminent.[7]  On the other hand, the parties have represented to the Court that they were attempting to informally resolve the dispute, at least with respect to Hahn's retention of Foundever's information.  There is no indication that any proposed resolution would have addressed Hahn's continued employment at WebHelp.  When asked at the hearing why Foundever did not seek injunctive relief with respect to her

---

[7] Nor, contrary to Foundever's contention at the hearing, was Hahn late in responding to the motion for preliminary injunction.  Middle District of Florida Local Rule 6.02(c) provides that the opposing party must respond "within seven days after notice of the motion or seven days before the hearing, *whichever is later*." (emphasis added).  A hearing was first scheduled for September 7, 2023. Doc. 19.  Accordingly, the Court gave Hahn a response deadline of August 31, 2023: seven days before the hearing. *See* Docs. 18, 22.

employment sooner, counsel explained that it did not want to move for injunctive relief in a piecemeal fashion.

Given that settlement discussions related to the return of Foundever's information were ongoing, the Court finds that its delay in moving for this type of injunctive relief does not negate a finding of irreparable harm. But Foundever has not adequately explained why it did not seek injunctive relief to prevent Hahn's continued breach of the non-competition agreement as early as late April, when Hahn informed it that she did not believe she was in breach. Absent any indication that the parties' settlement discussions were likely to resolve the issue of Hahn's employment, Foundever's failure to move for injunctive relief in the intervening months demonstrates a lack of urgency and imminency. Under these circumstances, the Court is hard-pressed to find that irreparable injury is likely because of Hahn's continued employment at WebHelp. Plaintiff has not established this factor with respect to its request for an injunction that prohibits her employment.

## C. Balance of Harms

Next, the Court must consider whether a balance of the relative harms between Foundever and Hahn weighs in favor of issuing an injunction. Foundever argues that it will face irreparable and immediate harm absent an injunction, in the form of "substantial losses in the marketplace…the loss of irreplaceable trade secrets and confidential information, and irreparable loss of customer relationships and good

will." Doc. 14 at 21.  Any harm to Hahn will be minimal because she will simply need to comply with the law and the terms of her Employment Agreement. *Id.*[8]

Hahn does not assert that she would be damaged by an injunction against using or disclosing Foundever's information or soliciting its customers or employees. Doc. 22 at 18.  Indeed, such an argument would conflict with her claim that she has no intention to do so in her new role.  Counsel instead argued at the hearing that this type of injunction is unnecessary.  Thus, the balance of equities supports the issuance of such injunctive relief.

But Hahn does argue that she would be greatly harmed by an injunction that prohibits her from working for WebHelp for a period of six months, which she says is "significantly farther into the future than the six months the parties contemplated in the agreement." *Id.*

The Court has found that Hahn's continued employment at WebHelp presents a risk of injury to Foundever, but that Foundever's lack of urgency in seeking injunctive relief to rectify it weighs against a finding of irreparable harm.  Balanced against this is the certain harm to Hahn that would result from the loss of her

---

[8] Foundever does not argue that the Court should apply Fla. Stat. § 542.335(g)(1), which states that, in determining the enforceability of a restrictive covenant, a court "[s]hall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought." In *TransUnion Risk and Alternative Data Solutions, Inc. v. MacLachlan*, 625 F. App'x 403, 407 (11th Cir. 2015), the Eleventh Circuit held that the district court erred when it applied § 542.335(g)(1) to the preliminary injunction analysis, because the section applies only to the *enforceability* of a restrictive covenant, rather than its *enforcement*. Although *MacLachlan* is not a binding decision, the Court finds its reasoning persuasive and will therefore not apply § 542.335(g)(1) to its balancing of harms analysis.

employment. *See, e.g.*, *Delivery.com Franchising, LLC v. Moore*, 20-20766-CIV, 2020 WL 3410347, *13 (S.D. Fla. June 19, 2020) (plaintiff's threatened non-monetary injuries were speculative, while the harm to defendant from injunctive relief would be substantial); *MicroLumen, Inc. v. Allegrati*, No. 8:07-cv-350-EAK-TBM, 2007 WL 9757950, *13 (M.D. Fla. Aug. 31, 2007) (proffered evidence demonstrated little actual harm to plaintiff or actual competition by defendant to date, while injunctive relief would likely bankrupt defendant).

In addition, "[t]he purpose of the preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011), citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  At this point, Hahn's employment by WebHelp is the status quo, and has been for the last six months. *See Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, LLC*, 199 F.Supp.2d 1271, 1305 (M.D. Fla. 2001) (hardship to plaintiff did not outweigh hardship to defendants if defendants were prohibited from continuing with their current employment, which would "alter the status quo and award Liberty American nearly all the relief it would be entitled to at a trial on the merits if it prevailed.").  A preliminary injunction would not preserve the status quo in this case.

On the other hand, the loss of Hahn's employment would be, arguably, a self-inflicted injury caused by her breach of the non-compete. *See 7-Eleven, Inc. v. Kapoor Bros. Inc.*, 977 F.Supp.2d 1211, 1227 (M.D. Fla. 2013) (holding that balance of harms weighed in plaintiff's favor despite harm to defendant; observing that, in cases where

a franchisee breached the terms of its franchise agreement, "courts regularly find that a franchisee cannot then be heard to complain of harm from an injunction preventing further use of the franchisor's trademark"); *Dunkin Donuts Franchised Restaurants LLC v. EMST Donuts, LLC*, No. 2:07-cv-422-MMH-DF, 2007 WL 9718746, *12 (M.D. Fla. Sept. 17, 2007) (same).   This Court has previously noted that "[a] defendant who voluntarily enters a covenant not to compete and receives substantial benefits from his employment cannot now claim that the harm from enforcing the covenant he agreed to would be too great a hardship on him." *Edwards Moving & Rigging, Inc. v. Jenkins*, No. 8:19-cv-1004-CEH-SPF, 2020 WL 7707025, *19 (M.D. Fla. Dec. 29, 2020) (Honeywell, J.) (quotation omitted); *see also Cady Studios, LLC v. Clift*, No. 1:18-cv-4670, 2018 WL 11420537, *13 (N.D. Ga. Nov. 13, 2018) (balance of harm weighed in favor of plaintiff even where it would preclude defendant's upcoming employment with plaintiff's direct competitor).   Moreover, the Employment Agreement specifically contemplates the extension of the non-compete period for the time the employee is in breach. Doc. 14-1 at 20, § 5(d).   Hahn's argument that the injunction period would be longer than what the parties agreed to in the non-compete is therefore unavailing.[9]

In all, the Court finds that this factor does not weigh in favor of either party with respect to an injunction that prohibits Hahn from continued employment with a

---

[9] However, Foundever has not proven that Hahn was in breach of the non-competition provision for a period of six months, because it has not refuted her contention that she did not begin working at WebHelp until April 10, 2023, more than two months after her employment at Sitel/Foundever ceased.

competitor.  Foundever therefore has not clearly established that the balance of harms supports this type of injunctive relief.

### D. The Public Interest

The final factor is whether the public interest will be served by granting a preliminary injunction.  Foundever contends that the public interest will be served by enforcing a valid contract that promotes legitimate business interests. *Id.* at 21-22. Hahn responds that eliminating competition disserves the public interest, apparently implying that even a valid restrictive covenant should not be enforced. Doc. 22 at 17-18.

Hahn's position that non-competition provisions, as a whole, do not serve the public interest is unsupported, and is also in conflict with the caselaw and Florida public policy. *See* Fla. Stat. § 542.335(1) ("enforcement of contracts that restrict or prohibit competition…is not prohibited" as long as they are reasonable in time, area, and line of business); *id.* § 542.335(1)(i) ("No court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless…such public policy requirements substantially outweigh the need to protect the legitimate business interests or interests established by the person seeking enforcement").  As a result, courts have found that preliminary injunctions enforcing valid restrictive covenants serve the public interest. *See, e.g., Nat'l Staffing Solutions, Inc. v. Sanchez*, 626 F.Supp.3d 1247, 1255 (M.D. Fla. 2022); *Freedom Med. Inc. v. Sewpersaud*, 469 F.Supp.3d 1269, 1279 (M.D. Fla. 2020); *7-Eleven, Inc. v. Kapoor Bros. Inc.*, 977 F.Supp.2d 1211, 1230 (M.D. Fla. 2013).  Foundever has established that

enforcement of the valid restrictive covenants Hahn entered into serves the public interest.

## V.   CONCLUSION

Foundever has clearly established that all four factors support the issuance of a preliminary injunction that prohibits Hahn from using or disclosing Foundever's information, or from attempting to solicit Foundever employees, customers, or prospective customers.  However, Foundever has not adequately demonstrated that it will experience irreparable injury absent an injunction that prohibits Hahn from providing customer services for any competing business, nor that the balance of harms weighs in its favor with respect to this type of injunctive relief.  The motion for preliminary injunction is therefore due to be granted-in-part and denied-in-part.

With respect to a bond, the Court finds that a nominal bond of $5,000 is appropriate considering the limited injunctive relief it is ordering.  Hahn argued that a much larger bond would be required to compensate her for the loss of employment and income that would result from an injunction enforcing the non-competition provision.  She did not identify any harm that would result from an injunction prohibiting her from using or disclosing Foundever's information or soliciting or attempting to solicit Foundever customers.  A nominal bond of $5,000 is therefore sufficient to cover any such costs and damages as may be incurred or suffered should it later be determined that Hahn was wrongfully enjoined or restrained. *See Quality Labor Mgmt., LLC v. Galvan*, No. 6:21-cv-588-PGB-DAB, 2021 WL 4935745, *5 (M.D. Fla. July 12, 2021); Fed. R. Civ. P. 65(c).

Accordingly, it is **ORDERED**:

1. Plaintiff Foundever Operating Corporation's Motion for Preliminary Injunction (Doc. 14) is **GRANTED-IN-PART and DENIED-IN-PART**.

2. A preliminary injunction will be entered by separate order.   In the preliminary injunction, Defendant Hilary Hahn and any other person or entity acting in concert or participation with her will be enjoined from:

   a. Disclosing, reproducing, transferring, or otherwise utilizing any confidential information or trade secrets of Foundever;

   b. Inducing or attempting to induce any person who during the term of this injunction is an employee, consultant, sales agent, representative, or contractor of Foundever to terminate his or her employment or other relationship with Foundever; and

   c. Inducing or attempting to induce any customer or prospective customer with whom Hahn had contact during her employment with Foundever to terminate any written or oral agreement or other relationship with Foundever or reduce the amount of business it conducts with Foundever.

   The preliminary injunction will order Foundever to maintain in place a nominal bond in the amount of $5000.00 with the Clerk of Court.

**DONE** and **ORDERED** in Tampa, Florida on November 13, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties